**SMOKEY, INC., a Delaware corporation, Defendant Below, Appellant,**

**v.**

**PANY INVESTMENT COMPANY, a corporation of the Commonwealth of Pennsylvania, assignee of William Weiner and Abraham Kristol, Plaintiff Below, Appellee.**

Supreme Court of Delaware.
April 15, 1971.

Petition for Reargument Denied
April 29, 1971.

David Roeberg and Stephen B. Potter, of Sullivan, Potter & Roeberg, Wilmington, for Smokey, Inc., appellant (defendant).

John T. Gallagher, of Morris, Nichols, Arsht & Tunnell, Wilmington, for Pany Investment Company, appellee (plaintiff).

WOLCOTT, C. J., and CAREY, Justice, and DUFFY, Chancellor, sitting.

DUFFY, Chancellor.

This appeal brought up for review an order of the Superior Court entering judgment for Pany Investment Company (plaintiff) in a mortgage foreclosure action and directing issuance of a writ of *levari facias* for sale of the property.[1]

A.

The property is an apartment complex in Dover; eleven buildings, each with ten or eleven rental units, are situated on some six acres of land. Towne Point Apartments, Inc. (defendant) owned the properties which were burdened by three mortgages: a first for $900,000, held by Metropolitan Life Insurance Company; a second for some $87,000, held by Pany; and a third for $32,000.

On June 9, 1970 Wilmington Plumbing Supply Co. secured a mechanics lien judgment for about $2,700 against Towne Point. On the basis of that judgment a sale of one apartment building and all of the land was scheduled by the sheriff for September 16.

On September 1 Pany, by an agreement with Towne Point, began to collect rents and manage the entire complex. Pany also took an assignment of the leases. On September 9 Pany began this foreclosure action against Towne Point and sought a writ of *levari facias*.

On September 16 counsel for Wilmington Plumbing bid the property in for $211.-10 which was the amount of the Sheriff's costs. In making the bid counsel was acting for himself, with the consent of Wilmington Plumbing. Immediately after the sale Smokey, Inc. was formed, apparently with counsel himself as the principal owner, and it received a deed to the property from the Sheriff.

Thereafter, Smokey was permitted to intervene in the foreclosure proceedings. It answered the complaint, asserted various affirmative defenses and filed counterclaims. On December 3 Pany moved for a default judgment against Towne Point, which had not answered, and an order of sale of the property. A hearing was held and both sides (Pany and Smokey) were directed to brief their arguments and show a legal basis for their positions. On December 17 Smokey filed a motion for judgment on the pleadings and a motion to amend its answer to include two more affirmative defenses. The latter was granted at a hearing on January 8, 1971.

On February 16 the Superior Court granted plaintiff's motion and ordered the property sold. All of Smokey's affirmative defenses and counterclaims were denied.[2]

1. The appeal was argued on March 8 and, because a court-ordered sale of the property was pending, an order was entered on March 9; that order affirmed the judgment below. By order the Superior Court fixed the amount of an appeal bond and approved its form but directed that the bond should not operate as a stay or supersedeas. Under Supreme Court Rule 22, Del.C.Ann., a trial court is called upon to fix the amount of bond and approve its form only if it decides to grant a stay. If, as in this case, a trial court determines not to grant a stay, then there is no occasion for it to either fix the amount of bond or review the form thereof.

2. The order provides in part:
"1. Judgment is entered for plaintiff and against Towne Point for principal, interest, late charges, counsel fees and costs in accordance with the prayer of the complaint.
2. Upon the entry of judgment against Towne Point and the filing of a praecipe directing to the Prothonotary

### B.

On the appeal Smokey bases its arguments on a single proposition: it has not had an opportunity to present its legal and factual defenses. It says that a default judgment against the co-defendant may not be the basis for rejection of its own defenses and counterclaims. In short, Smokey argues not the merits of its case, but only its right to be heard on them. So the question presented is just that: has Smokey been heard? Or, more precisely, has it had the opportunity to present its defenses? We think it did. And its difficulty may arise from its failure to understand that.

■ We first consider Smokey's status. Following the Sheriff's sale, it received a deed to the property and thus became the legal owner. It took title subject to the existing mortgages and was therefore entitled to be heard in protection of its rights in the property. Stieff v. Bailey, 27 Del. 508, 89 A. 366 (1913). Intervention was permitted.

■ Smokey says that the only issue before the Superior Court when it entered the order of February 16 was whether a default should be entered against Towne Point. And, it continues, a motion for default against the co-defendant could in no way be determinative of its own substantial defenses and counterclaims. Of course a default by a non-appearing party or an entry of judgment against one party does not, in the ordinary course of things, bind others who have appeared or who have not defaulted. And if "default", without more, was all that was involved, there might be merit to Smokey's argument. But the issue presented and argued below was not so narrow.

After Towne Point failed to appear and defend, Pany sought both the default judg-

of Kent County, a writ of levari facias shall issue to the Sheriff of Kent County for the sale of the mortgaged premises as described in Exhibit A to the complaint.

ment *and* a writ of *levari facias* ordering sale of the property. And Smokey says just that in its brief here: "On December 3, 1970 Pany noticed a motion for default judgment against Towne Point Apartments, Inc. and order of sale of the mortgaged premises as a result of said default judgment." The situation was this: Pany sought to foreclose *and* sell the property; Towne Point (which had given the mortgage) did not appear; Smokey, which had legal title, offered many defenses. But the critical question before the Court on the motion was not merely whether a default should be entered against Towne Point, the non-appearing former owner. The critical question concerned sale of the property and that was squarely before the Court.

It is thus abundantly clear that after service of the motion Smokey knew that more was at stake than a request for default against the co-defendant. Smokey knew, or should have known, that sale of the apartment complex was the remedy which Pany wanted in satisfaction of its claim. And this was emphasized at the hearing on the motion on December 11 when issues broader than the narrow question of default were considered. At argument on this appeal counsel for Smokey conceded that during the hearing the Superior Court gave it a week to brief the legal basis for its answer. Smokey filed a brief on December 18, arguing only that a default judgment could not be entered because it was not in default, and that a direction to sell the property would deprive it of property without due process of law. Pany then briefed the merits of its claim not only to a default judgment but also to an order of sale.[3] Smokey filed a reply brief on January 8, again limited to its right to be heard.

3. All of Smokey's affirmative defenses and counterclaims are denied."

3. In its brief Pany specifically pointed out that Smokey dealt with procedure, not the substance of the issues.

When the Superior Court considered the arguments made (for both a default and sale), and when the Court directed Smokey to show a legal basis for its answer, it was regarding the matter as one for judgment on the pleadings, or as a motion by Pany for judgment notwithstanding Smokey's answer. Smokey had the opportunity to brief its defenses, that is, to show why the sale should not be ordered because of the claim and contentions which it made. As Smokey argues here, a mere default against Towne Point did not affect its rights. But it failed to perceive that the issuance of a writ of *levari facias* would. In any event, Smokey declined to present legal authority for the defenses it had raised and chose to stand entirely on its own narrow view of the consequence of a default judgment against the co-defendant. It made that choice, mistakenly as it turns out; but the mistake arose from Smokey's decision, not from the Court's refusal to give it an opportunity to present its defenses.

### C.

We turn now to Smokey's counterclaim. Essentially, Smokey contends that it is entitled to rental income from the property between the date when it took legal title and the date of sale in the foreclosure proceeding. The order of the Superior Court had the effect of denying Smokey's counterclaim based upon its contention. There is no showing in this record that the question of rents was considered independently by the Superior Court and, in light of this, Smokey may not have had an opportunity to be heard on its claim for rents.

It is our understanding that the same issues regarding rents are raised in a related proceeding in the Court of Chancery which is now on appeal in this Court. In that action Pany secured an injunction which had the effect of prohibiting Smokey from interfering with the collection of rents by Pany. Smokey's rights to rents therefore appear to be in issue in that proceeding and it will have an opportunity to litigate such claims in the Chancery proceeding and the appeal therefrom.

The judgment is affirmed.